# BEECH-NUT PACKING COMPANY *v.* P. LORILLARD COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 249.   Argued March 17, 18, 1927.—Decided April 11, 1927.

1. A trade-mark is not abandoned and destroyed, as a matter of law, merely through disuse for five years. P. 632.
2. The fact that the good will once associated with a trade-mark has vanished does not end at once the preferential right of the proprietor to try it again on goods of the same class. *Id.*
3. Assuming that, where each of two parties has the right to the same trade name but on different types of goods, the arrangements and accompaniments adopted by the one for its display may not lawfully be imitated by the other, the right to object may be lost by lapse of time and change of circumstances. *Id.*

7 F. (2d) 967, affirmed.

CERTIORARI (269 U. S. 551) to a decree of the Circuit Court of Appeals affirming the District Court (299 Fed. 834) in dismissing the bill of the Beech-Nut Company to enjoin the other party from infringing its right in the registered trade-mark "Beech-Nut," and from acts of alleged unfair competition.

*Mr. Charles E. Hughes,* with whom *Messrs. Walter A. Scott, James R. Offield,* and *H. McClure Johnson* were on the brief, for petitioner.

*Mr. John W. Davis,* with whom *Messrs. William R. Perkins* and *John Milton* were on the brief, for respondent.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a suit in equity brought by the petitioner, Beech-Nut Packing Company, a corporation of New York, charging the P. Lorillard Company, a corporation of New Jersey, with infringement of its registered trademark, 'Beech-Nut,' and with unfair competition. The bill also takes the possibly broader ground that 'Beech-Nut,' being the plaintiff's trade-mark and part of its corporate name, has become the plaintiff's badge and autograph so far that the public seeing the mark on any package of consumable goods will believe that the article is of the plaintiff's make. The trade-mark was first used on ham and bacon but gradually has been extended to many other articles so diverse as chewing gum, peanut butter, and ginger ale, but always, the plaintiff says, as a guaranty of excellence, often expressed by it in advertisements, as 'Beech-Nut Quality.' The defendant uses the words 'Beech-Nut' on chewing tobacco and cigarettes, and the bill takes the hardly consistent positions, on the one hand that the plaintiff's reputation is hurt

with its refined female customers by the belief that it would manufacture a cheap chewing tobacco, and on the other hand that it may wish to extend its business into that domain. The bill was dismissed on the merits by the District Court, 299 Fed. 834, and by the Circuit Court of Appeals. 7 F. (2d) 967. As the principles involved seemed important, and as it was urged that the decision was in conflict with decisions in other Circuit Courts of Appeals, such as *Aunt Jemima Mills Co.* v. *Rigney,* 247 Fed. 407, and *Vogue Co.* v. *Vogue Hat Co.,* 6 F. (2d) 875, a writ of certiorari was granted by this Court. 269 U. S. 551.

The plaintiff's trade-mark goes back to before the beginning of this century. The registration specially relied upon was dated December 31, 1912, and states that the plaintiff has adopted the mark for use upon a large number of specified objects, including those that we have mentioned, " all in Class 46, Foods and ingredients of foods." The defendant claims the mark ' Beechnut ' for tobacco through successive assignments from the Harry Weissinger Tobacco Company, of Louisville, Kentucky, which used it from and after 1897. The plaintiff does not contest the original validity of this mark or suggest any distinction on the ground that it originated in a different State, but says that the right has been lost by abandonment. It appears that brands of tobacco have their rise and fall in popular favor, and that the Beechnut had so declined that in 1910 only twenty-five pounds were sold, and the trade-mark was left dormant until after the dissolution of the American Tobacco Company which then held it. This was in 1911, and the Lorillard Company took over the mark with many others. Then, in connection with an effort to get a new brand that would hit the present taste, this mark was picked out, some of the adjuncts were changed, and in 1915 the new tobacco was put upon the market. Nothing had happened in

the meantime to make the defendant's position worse than if it had acted more promptly, and we see no reason to disturb the finding of two Courts that the right to use the mark had not been lost. The mere lapse of time was not such that it could be said to have destroyed the right as matter of law. A trade-mark is not only a symbol of an existing good will, although it commonly is thought of only as that. Primarily it is a distinguishable token devised or picked out with the intent to appropriate it to a particular class of goods and with the hope that it will come to symbolize good will. Apart from nice and exceptional cases, and within the limits of our jurisdiction, a trade-mark and a business may start together, and in a qualified sense the mark is property, protected and alienable, although as with other property its outline is shown only by the law of torts, of which the right is a prophetic summary. Therefore the fact that the good will once associated with it has vanished does not end at once the preferential right of the proprietor to try it again upon goods of the same class with improvements that renew the proprietor's hopes.

It may be true that in a case like the plaintiff's its rights would not be sufficiently protected by an injunction against using the marks upon goods of the same class as those to which the plaintiff now applies it and to which its registration is confined. Upon that we express no opinion. For when it is conceded that whatever its effect the defendant has a right to use ' Beechnut ' on tobacco unless the right has been abandoned, that possibility does not matter. Again, it may be true that in putting a hyphen between Beech and Nut, framing its label with an oval and substituting a beechnut for a squirrel in the centre the defendant was trying to get an advantage from the plaintiff's good will and if challenged at once might have been required to make it even plainer than it was

made by the word ' Lorillard's,' in large letters upon the label, that the plaintiff had nothing to do with the goods. But the plaintiff waited until 1921. The Lorillard Company is at least as well known to those who do not despise tobacco as the Beech-Nut Company is to its refined customers, and the time and the need for that additional precaution has gone by. If the plaintiff was misled in its reason for thinking that the defendant's right had been kept alive it was right in its belief, and further, the belief had no bearing on the question whether the mark was presented in an unjustifiable form.

Now that the case has been more fully considered than it could be on the petition for certiorari, it seems to us that the facts do not present the nice question upon which the petitioner wished us to pass. Both Courts having found for the defendant, we see no ground upon which it can be said that they were wrong as matter of law. *Joseph Schlitz Brewing Co.* v. *Houston Ice & Brewing Co.,* 250 U. S. 28, 29.

*Decree affirmed.*