**LA FAYETTE BREWERY, Inc., v. ROCK ISLAND BREWING CO.**

**Patent Appeal No. 3735.**

Court of Customs and Patent Appeals.

Feb. 8, 1937.

Thomas L. Mead, Jr., of Washington, D. C. (Brenton A. Devol, of La Fayette, Ind., of counsel), for appellant.

Myron B. Stevens, of Washington, D. C., and John B. Hosty, of Chicago, Ill., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is a trade-mark interference proceeding in which the Commissioner of Patents affirmed the decision of the Examiner of Trade-Mark Interferences (although not concurring in all the latter's conclusions) which, in effect, awarding priority to appellee, held it entitled to the registration sought. By appeal, we are called upon to review the decision of the Commissioner.

The marks are, respectively, "Old Tavern" and "Ye Tavern," for application upon beer or malt beverages of legal alcoholic content. They are conceded to be so similar as to confuse if used, as is proposed, upon identical merchandise.

The application of appellee for the registration of Old Tavern was filed July 24, 1933. Use of the mark by appellee and its predecessors was claimed in the petition "since November 1, 1908."

The application of appellant for registration of Ye Tavern was filed August 14, 1933, with use alleged by it and its predecessors "since about March 1913."

The interference was declared January 8, 1934. As declared, there seem to have been other parties to it, but in some manner not here of importance they were eliminated, and the case comes to us with appellee as the senior party.

Devolution of title by the respective parties is presented as being of primary consequence in the case, and this necessitates a statement of the somewhat complicated state of facts, and consideration of the law thereunder.

Appellee's mark, "Old Tavern," seems to have been adopted by Des Moines Brewing Company, a corporation of West Virginia operating in Des Moines, Iowa, about 1908, 1909, or 1910, and the company obtained registration of the mark November 5, 1912. Some time in 1915, because of legislation in the state of Iowa, or local legislation by the city of Des Moines, Des Moines Brewing Company was forced to discontinue the manufacture and sale of beer. About one year thereafter it reincorporated as Des Moines Industrial Company, and to the latter were conveyed all the properties of the former. In April, 1917, it is claimed that a concern known as Rock Island Brewing Company took title to the mark from Des Moines Industrial Company. This transaction and subsequent usage of the mark will be the subject of later comment. In June or July, 1933, Rock Island Brewing Company changed its name to R. I. B. Holding Company and also formed a new company under the old name, "Rock Island Brewing Company," which is the appellee here. It claims title to the mark by transfer from either the original Rock Island Brewing Company, or the R. I. B. Holding Company. Concerning the evidence as to this conveyance of the mark there is a controversy to be later herein discussed.

The mark, "Ye Tavern," seems to have been adopted by a company, styled the Thieme & Wagner Brewing Company, doing business at La Fayette, Ind., in 1913. In 1916 there was organized, under the laws of the state of Indiana, a corporation by name of National Fruit Juice Company, for the purpose of manufacturing and selling fruit juices, fruit juice beverages, vegetable juices, and soft drinks. The charter did not authorize it to manufacture beer, but apparently permitted it to manufacture near beer. The stockholders of the Thieme & Wagner Brewing Company appear to have owned all the common stock of National Fruit Juice Company, and late in 1918, or early in 1919, there were proceedings in the way of stock transfers which, in a sense, merged the two corporations under the name of the latter, and the former went out of existence about that time. During the period when both existed they were, of course, separate legal entities, although owned by common stockholders. La Fayette Brewery, Inc., the appellant here, was incorporated in February, 1933, and it claims title to the mark by virtue

of a transfer made to it by National Fruit Juice Company, executed in May of 1933.

It thus appears that appellee claims a chain of title which runs from Des Moines Brewing Company (which adopted the mark in 1908, 1909 or 1910, and registered it in 1912) to Des Moines Industrial Company (by transfer in 1917) to R. I. B. Holding Company (in 1933) to the present Rock Island Brewing Company (in June or July, 1933).

The Examiner of Interferences sustained the aforesaid claim, and held that appellant's predecessor, the Thieme & Wagner Brewing Company, had no right, particularly in view of the 1912 registration of "Old Tavern" by Des Moines Brewing Company (Registration No. 89,-014, November 5, 1912), to adopt the mark "Ye Tavern" in 1913.

■ The Commissioner disagreed that the chain of title as stated was complete, for the reason that, after Des Moines Industrial Company had acquired the property in 1916, it proceeded to dismantle the plant and dispose of the property, "not as a going business but as incidental to the liquidation of its assets." It seems that the real estate was sold to one individual, the personal property to another, and the naked trade-mark to a third. The Commissioner says, "The business itself simply ceased to exist," and, evidently upon the theory that there could be no conveyance of the mark apart from the business, held that the attempted transfer of it to the original Rock Island Brewing Company in 1917 "accomplished nothing more than an abandonment of the mark by the assignor, and conferred no rights on the assignee that it did not otherwise acquire by its adoption and use of the mark," citing Rice-Stix Dry Goods Co. v. Schwarzenbach-Huber Co., 47 App.D.C. 249.

We are of opinion that under the facts of record the Commissioner's holding upon this point is sound.

The Commissioner holds, however, that the original Rock Island Brewing Company adopted the mark "coincident with its abandonment by Des Moines Industrial Company," and applied it to beer until the advent of national prohibition, and then on near beer until 1928 when its business was suspended, and further that, so soon as it again became legal to manufacture beer, that is, in 1933, Rock Island Brewing Company or its successor by the same name, appellee here, resumed the business and the use of the mark. Citing Beech-Nut Packing Co. v. P. Lorillard Co., 273 U.S. 629, 47 S.Ct. 481, 71 L.Ed. 810, the Commissioner held, in concurrence with the Examiner, that the nonuse of the mark during the five-year period from 1928 to 1933, while it was illegal to manufacture real beer, did not constitute an abandonment of the mark. No error is assigned by appellant as to this holding, and, if it be assumed that Rock Island Brewing Company had the right to adopt the mark in 1917, a question to be later discussed herein, appellee would appear to be entitled to the benefit of that date for adoption and use.

■ A point most earnestly stressed by counsel for appellant goes to the character of the evidence relating to the transfer of the mark to appellee. It is insisted this transfer is not evidenced in the record by any writing and that the record discloses that at the time the transfer of the old company to appellee was effected "there were written documents affecting the sale," which should have been produced as the best evidence of the transaction. In view of the emphasis which appellant's counsel place upon this, we quote the following from the testimony of Mr. Robt. Wagner, president of the old Rock Island Company, but not connected with appellee, and the action taken by counsel. The last question to and answer of Mr. Wagner on direct examination read:

"Q. 44. When you sold out to the present corporation, the Rock Island Brewing Company, did you sell all your good will, trade-marks and patents? A. Well they were included in the sales price, yes."

Thereupon his cross-examination began and the following appears therein:

"Q-X. 46. At the time that the sale of the plant of the old company to the new company was effected, was there any written documents affecting the sale? A. I think there were.

"Q-X. 47. Are they available? A. Well, Mr. Tegeler would have them if any one has.

"By Mr. Devol: At this point the La Fayette Brewing Company moves to strike the answer of the witness to the effect that in the sale the trade-marks, good will, etc., were transferred, for the reason that it appears the transaction was in writing and the writing itself being the best evidence, should be produced and oral testimony, be-

ing secondary, should not be permitted to stand.

"By the Notary: Ruling reserved."

As to the general rule relating to written documents being the best evidence, etc., counsel for appellant states its substance correctly in the motion made, but the difficulty is that the record is not in a condition where appellant can derive any advantage from it here.

The testimony quoted was taken before a notary in Rock Island, Ill. It was not the function of the notary to pass upon the motion to strike. That was a matter to be determined, in the first instance, by the Examiner of Interferences. There is nothing of record to indicate that the motion to strike was renewed before him, as obviously it should have been if insistence upon it was to be pursued. The matter is not alluded to in the decision of the Examiner of Interferences, and there is no assignment of error covering it in connection with appellant's appeal to the Commissioner. It does seem to have been urged in the argument before the Commissioner, and in his decision he says, "The transfer of the mark to appellee is amply established by parol evidence to which no objection was interposed. * * *"

It is our view that, since appellant failed to renew the motion to strike before the Examiner of Interferences, and since there was no assignment of error in the appeal to the Commissioner upon this point, we may not uphold the assignment made for the first time in the appeal to this court. It seems proper to add that, even were the assignment sustained here, and all of Wagner's testimony on this point were stricken, there is other unobjected to parol evidence sufficient, in our opinion, to show the transfer to appellee.

Counsel for appellant seems also to have argued before the Commissioner that there was no proof of any use by the R. I. B. Holding Company of the mark. There is, however, no assignment of error before us upon that point, and the Commissioner's holding as to this phase of the controversy will not be disturbed.

Appellant's claimed chain of title of "Ye Tavern" runs from the Thieme & Wagner Brewing Company (which adopted the mark in 1913) to National Fruit Juice Company (by transfer in 1918 or early in 1919) to appellant (by transfer in May, 1933).

That the Thieme & Wagner Brewing Company used the mark upon beer until some time in 1918 when, by reason of the Indiana law, it became illegal to manufacture and sell beer in that state, is established by the record, but, after the mark passed to National Fruit Juice Company, it was no longer used upon beer, and the testimony as to its use upon any other merchandise is very meager.

Mr. William G. Gude, who at the time of testifying was vice president of appellant company, but who, so far as the record shows, was not connected with either the Thieme & Wagner Brewing Company or National Fruit Juice Company, testified that the Thieme & Wagner plant, for a time after the dry law of Indiana was passed, made near beer, but does not state that the mark was used upon it. He says that after "the corporate name was changed to the National Fruit Juice Company" a product was manufactured called Apella. That apparently was an apple juice, but there is no statement that the mark was used upon it. The witness also testified that the same plant originally used by the Thieme & Wagner Brewing Company was used by National Fruit Juice Company, and, at the time of his testimony, was being used, with much of the original equipment, by appellant, but this is no proof of use of the mark. He did identify a paper filed as Exhibit No. 5 of appellant, "as an old National Fruit Juice Company letterhead," and on it appears "Ye Tavern, cereal beverage." There is nothing to identify the time when this letterhead was in use, if ever, We find nothing in the testimony of any of the other witnesses from which we should feel justified in drawing the conclusion that National Fruit Juice Company ever, in fact, used the mark on any product, but both the Examiner and the Commissioner indicate that that company may have used it on a cereal beverage, by which we suppose near beer may be meant, until during 1922. Certainly from 1922 to 1933 there is nothing to show any use of the mark by National Fruit Juice Company upon any product whatsoever. In May, 1933, National Fruit Juice Company executed an instrument that was recorded in the Patent Office which purported to convey its trade-marks to appellant, "Ye Tavern The Beverage DeLuxe" and "Ye Tavern Brew The Beer DeLuxe" being specifically named, "Together with all the right, title and interest of said as-

signor in and to said trade-marks * * * and in and to the good will and business in connection with which the said trade-marks * * * have been used." It may be said that there is no showing in the record that either of the above-quoted marks was ever registered in the United States Patent Office.

■ The difficulty with appellant's case, as we see it, is that its assignor had not, for at least eleven years prior to the transfer, had any business in connection with which the marks are shown to have been used, and so it had no "good will in connection therewith" to convey. The burden here rests upon appellant as the junior party to establish its case, and, as observed by the Commissioner, any doubt must be resolved against it. Certain phases of the case of Brewster-Ideal Chocolate Co. v. Dairy Maid Confectionery Co., 62 F.(2d) 844, 20 C.C.P.A.(Patents) 848, seem in point here.

■ The conveyance by National Fruit Juice Company to appellant seems to us to be, in its legal aspects, on all fours with the conveyance in 1917 by Des Moines Industrial Company to the Rock Island Brewing Company, above detailed, and the transaction cannot be given any legal status other than that of abandonment of the mark.

However, there are some other phases which require consideration. As has been stated, the Commissioner held that the Old Tavern mark in use, first upon beer and later upon near beer, as has been recited, did not become abandoned by its nonuse from 1928 to 1933, during the period when it was illegal to manufacture real beer. It is suggested, in substance, on behalf of appellant, that during the period when "Ye Tavern" was not being used, say from 1922 to 1933, the same condition as to illegality existed and that there was no more an abandonment of "Ye Tavern" than of "Old Tavern."

This question we need not determine, because we do not hold that abandonment of the mark by the National Fruit Juice Company resulted from its nonuse during the period mentioned. Whatever may be the legal result of that, it is thought that abandonment did result from the transfer to appellant when it was not accompanied by the transfer of any business with which the mark is shown to have been used, and so appellant acquired no rights in the mark.

When so abandoned, we think it was abandoned to the public, subject, however, to any rights which appellant may have had by reason of the circumstances already related. This necessitates a further consideration of the conditions which existed in 1917.

As has been stated, the Commissioner held that the transfer of the naked mark by Des Moines Industrial Company to Rock Island Brewing Company in that year conveyed nothing and amounted to an abandonment of the mark, and, upon that theory, says that: " * * * The Thieme and Wagner Brewing Company then had the same privilege to adopt the mark as had the Rock Island Brewing Company, and at that point, so far as can be determined from the record, the rights of the two companies to the mark were equal. Mayer Fertilizer & Junk Co. v. Virginia-Carolina Chemical Co., 35 App.D.C. 425."

The foregoing means, to express it in other words, that the act of the Des Moines Industrial Company resulted in an abandonment to the public of the Old Tavern mark.

Accepting that theory, we are at once confronted with the fact that in that year, 1917, and in 1918 the Thieme & Wagner Brewing Company is shown to have been using the mark on beer. The query is whether, if it was in fact abandoned by Des Moines Industrial Company, Rock Island Brewing Company (not acquiring any rights by reason of the conveyance to it) had any legal right, in view of the Thieme & Wagner Brewing Company's then current use of the mark, to adopt it and use it, as it did, first on beer and later on near beer as already recited. If it had no such right, then it would seem that appellee has no right to claim title through the transfer made to it in June or July, 1933.

It seems to us that, had the Thieme & Wagner Brewing Company moved at that time to estop the original Rock Island Brewing Company from using the mark, it might quite plausibly be argued that it could have prevailed, or, in any event, that, had the original Rock Island Brewing Company then sought to register the mark, the Thieme & Wagner Brewing Company might have successfully opposed the registration.

But none of these things took place; "Ye Tavern" passed from the Thieme &

Wagner Brewing Company to National Fruit Juice Company and fell into disuse during a period of eleven years, at the end of which time conditions had become such as that, when the latter transferred the mark to appellant, it had no business or good will with which the mark is shown to have been used to transfer. Hence, we think appellant derived nothing from the transfer upon which it may here rely. Certainly it derived nothing more than the original Rock Island Brewing Company derived from the transfer to it of "Old Tavern" in 1917.

As will be seen from the views hereinabove stated, we find ourselves in disagreement with certain of the holdings of both the Examiner of Interferences and the Commissioner, but we arrive at the same conclusion at which they arrived.

■ Under all the facts and circumstances of the case, we do not feel that either party is legally entitled to rely upon use, etc., by its predecessors, immediate or remote, to establish priority, but that the issue must be determined upon the basis of the respective filing dates of the parties.

Upon this basis, appellee, having been the first to file, is entitled to an award of priority with, so far as this record is concerned, right of registration, and the decision of the Commissioner so adjudging is affirmed.

Affirmed.