## JAMES HEDDON'S SONS v. COE, Com'r of Patents.

### Civil Action No. 15137.
District Court of the United States for the District of Columbia.

July 24, 1943.

A. Yates Dowell, of Washington, D. C. (Banning & Banning, of Chicago, Ill., of counsel), for plaintiff.

W. W. Cochran, Sol. of Patent Office, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for defendant.

LUHRING, Justice.

Pursuant to R.S. § 4915, 35 U.S.C.A. § 63, the plaintiff seeks to have the court authorize the registration of a trade-mark adopted by the plaintiff in connection with its fish baits.

As originally filed on the 15th day of July, 1939, the application stated: "The trade-mark is applied or affixed directly to the lures and also to the boxes in which such lures are contained." The Examiner refused registration on the ground that the mark was "descriptive and when directly applied to applicant's goods (fish lures) as a simulation of the ribs of a fish it fails to function as a trade-mark to distinguish the goods of one manufacturer over others of the same class." Responsive to that action, the application was amended to read as follows: "The trade-mark is applied or affixed to the boxes in which the lures are contained and in other manners customary in the trade." As thus amended, the trade-mark was approved for registration.

The proposed trade-mark is not easily described. In a general way it may be said to represent the bony structure of a fish. Indeed, the plaintiff admits that the bony structure of a Shore Minnow was the inspiration for the mark. An official of the Patent Office described it as "a design consisting of a series of thick parallel curved lines of gradually increasing length bisected by a heavy radial line." The plaintiff has called it a "herringbone."

After the approval of the mark for registration and publication in the Official Gazette, an opposition was filed by the Millsite Steel and Wire Works, alleging in part that applicant has applied the alleged mark to the goods in a manner which is merely a simulation of the ribs of a fish and fails to function as a trade-mark. That applicant has used the mark as a decoration or ornamentation of fish lures but not as a trade-mark. That the said mark is not the proper subject matter for a valid trade-

mark. That the mark has not been used by applicant in a manner indicative of the origin of the goods.

At the time this opposition was filed in the Patent Office, there was pending in the United States District Court for the Eastern District of Michigan, Southern Division, Civil Action No. 944, wherein the plaintiff here charged the opposer, Millsite Steel and Wire Works, Inc., with infringement of certain of its patents, among which was Wooster Design Patent No. 93,370, issued September 19, 1934, and assigned to this plaintiff; also with trade-mark infringement and unfair competition.

Proofs were taken and a hearing was had before the Examiner of Interferences in the opposition proceeding. He sustained the Opposition, holding that the mark serves a utilitarian purpose and is deemed to be a device within the meaning of the descriptive clause of section 5 of the Trade Mark Act of 1905. 15 U.S.C.A. § 85. Registration was also refused by the Examiner on the ground that applicant's mark is descriptive of the goods to which it is appropriated.

On appeal, the Commissioner of Patents dismissed the Opposition but upheld the Examiner's finding that the mark serves a utilitarian purpose and affirmed his denial of registration. Both parties petitioned for a rehearing. In overruling the opposer's petition, the Commissioner simply stated that "I am still of the opinion that the Opposition should be dismissed." However, in dealing with the applicant's petition, he said: "Applicant's petition appears to be predicated upon a misunderstanding of my decision. I held that the mark in question was nonregistrable because it 'constitutes an essential element' and 'is an integral part' of a portion of the goods with which it is used. The mark is a so-called 'herringbone pattern,' and the goods described in the application are fish lures. Some of these lures are reproductions of transparent minnows, upon the side of which the mark is painted to simulate the appearance of live minnows when swimming. Counsel for applicant insist that the presence of the mark adds nothing to the fish-catching value of such lures, and that the mark thus serves no utilitarian purpose. The mark, however, is a part of the lure, and the lure would be incomplete without it. Whether the mark, or the lure as a whole for that matter, is useful or useless in catching fish, is quite beside the point. The question is whether or not the mark

is an essential feature of the article as sold. In my opinion it is."

The testimony taken in the opposition proceeding is before the court, as is also the record on appeal in the case of James Heddon's Sons v. Millsite Steel & Wire Works, Inc., being the suit before the Michigan court. That record contains the evidence heard in that proceeding. Judge Tuttle's decision is reported in D.C., 35 F.Supp. 169 and affirmed in 6 Cir., 128 F.2d 6.

■ It is well to keep our bearings and not lose sight of the primary purpose of a trade-mark. Generally and briefly stated, that purpose is to denote the origin of the goods. The Supreme Court has had occasion to define a valid trade-mark. In Columbia Mill Co. v. Alcorn, 150 U.S. 460, 14 S.Ct. 151, 152, 37 L.Ed. 1144, it was said: "It must be designed, as its primary object and purpose, to indicate the owner or producer of the commodity, and to distinguish it from like articles manufactured by others. * * * if the device, mark, or symbol was adopted or placed upon the article for the purpose of identifying its class, grade, style, or quality, or for any purpose other than a reference to or indication of its ownership, it cannot be sustained." The Supreme Court also said of a trade-mark: "Primarily it is a distinguishable token devised or picked out with the intent to appropriate it to a particular class of goods and with the hope that it will come to symbolize good will." Beech-Nut Packing Co. v. P. Lorillard Co., 273 U.S. 629, 47 S.Ct. 481, 482, 71 L.Ed. 810.

The United States Court of Appeals for the District of Columbia, having in mind the primary purpose of a trade-mark, has held that if such a mark serves a useful purpose it cannot be registered. The case of In re Goodyear Tire & Rubber Co., 55 App.D.C. 400, 4 F.2d 1013, involved a mark for belting, hose and tires comprising diamond-shaped projections separated by grooves. The court refused registration, saying: "The diamond-shaped projections, which appellant claims as a trade-mark, are clearly descriptive of the goods on which they are used, since they form a very essential part of the goods itself. In other words, these projections are molded on the face of a rubber tire, either to enhance the wear, or to prevent skidding, or both. Section 5 of the Trade-Mark Act of 1905 (Comp.St. § 9490 [15 U.S.C.A. § 85]), among other things, provides 'that no mark

which consists merely in \* \* \* devices which are descriptive of the goods with which they are used shall be registered.' As suggested in brief of counsel for the Patent Office, 'the most accurate way of describing an article is possibly by the article itself.' "

The same conclusion was reached in Re Barrett Co., 48 App.D.C. 586. It was there held that a design applied to the surface of roofing material, and formed by horizontal and vertical lines embossed or indented into the material in such manner as to leave the surface corrugated in squares, is a mere structural feature of the goods and is not registrable as a trade-mark. The court quotes the Assistant Commissioner as follows: "The applicant suggests that if its mark had been one or two squares stamped in the corner of the sheet of roofing, there would have been no objection to its registrability if new, and asks what reason there is for refusing registration merely because the applicant has applied the mark all over the surface of the goods. The answer to this is that, by applying the mark all over the surface, the mark ceases to be a mark on the surface and becomes the surface itself. The mark, if there was one, is entirely lost by the mere fact of uniform repetition over the whole surface. It is no longer capable of appealing to the beholder as a mark of origin, but would inevitably create the impression that it·was something else."

The plaintiff uses the mark on its baits and lures. It becomes an intregal part of the lure, but the plaintiff argues that the mark has no value or function. It seeks to support this contention by expert testimony and liberal quotations from the remarks of Judge Tuttle during the Michigan trial. It will serve no useful purpose here to quote at length from the testimony of the experts, nor to quote the comments of Judge Tuttle. Let one quotation from the deposition of Lyell J. Wooster, Sales Manager and Vice-President of the plaintiff, suffice. This deposition was presented by the plaintiff in the opposition hearing in the Patent Office and is found in plaintiff's exhibit M. At page 31 of the exhibit, the following questions were asked and answers given by Mr. Wooster on cross-examination by Mr. Caplan:

"XQ160. Now getting back to the point where we were before, from which we digressed; would you say that this herring-bone pattern has anything to do with the fish-getting quality of the bait on which it appears? A. None other than I stated before. This is repetition.

"XQ161. Would you review what you stated before and give your qualifications for your answer? A. You recently objected to repetition.

"Mr. Wood: I believe this is entirely repetitious.

"Mr. Caplan: Would you answer my question, please?

"The Witness: I guess you will have to give it to me again.

"(Whereupon Question 161 was here read by the court reporter, as above recorded.)

"Mr. Wood: The question is entirely too indefinite and vague. He has not said anything upon which he could be called upon to qualify.

"XQ162. I will rephrase the question and ask him once more whether the herring-bone pattern on the sides of the bait affects the fish-getting quality of the bait on which it appears.

"Mr. Wood: The same objection.

"A. No, as stated before the most important features as to the fish-getting qualities are action and color and markings are secondary, of a secondary importance.

"XQ163. Are they of any importance? A. That is hard to say, no two fishermen agree on just what factors in a bait catch the fish. I don't believe you ever could get two fishermen to agree on exactly what get the fish. It is a matter of personal opinion.

"XQ164. Do you have a personal opinion as to whether the markings of the side of the bait affect the fish-getting qualities of the bait? A. I don't think I do any more than any other factors, as far as I am concerned."

Mr. Wooster would not say that the herring-bone markings on the lure did not have fish-getting qualities. Indeed, he said he did not have a personal opinion whether they did or did not. His answers may be said to summarize the testimony before the court in this connection.

The fact remains that the plaintiff has made liberal use of this marking on its products and frequently placed the mark on both sides of the lure. When so used the mark becomes a very essential part of the lure.

The court agrees with the Patent Office tribunals and finds that the marking

is an essential element in giving the lure the desired appearance and serves a useful purpose. Therefore, it is not entitled to registration as a trade-mark and the complaint must be dismissed.

It is so ordered and counsel for defendant will prepare and submit appropriate findings of fact and conclusions of law in accord herewith.