CONTINENTAL DISTILLING CORPORA-
TION v. OLD CHARTER DISTILLERY
CO. et al.

No. 10031.

United States Court of Appeals
District of Columbia Circuit.

Dec. 7, 1950.

Leonard L. Kalish, Philadelphia, Pa., for appellant. Albert H. Kirchner, Washington, D. C., also entered an appearance for appellant.

Asher Blum, New York City, with whom Herbert J. Jacobi, Washington, D. C., was on the brief, for appellee Old Charter Distillery Co., Inc.

E. L. Reynolds, Solicitor, United States Patent Office, W. W. Cochran, former Solicitor, United States Patent Office, Washington, D. C., and Walter J. Derenberg, New York City, entered appearances for appellee John A. Marzall, Commissioner of Patents.

Before CLARK, WILBUR K. MILLER and PROCTOR, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

In this case two distillery companies, conceding their registered trade-marks for whiskey to be confusingly similar, are contending for priority. Continental Distilling Corporation, a Delaware corporation, has registration No. 311038 for its "Charter Oak" mark, and Old Charter Distillery Company holds registration No. 321823 for "Old Charter," by assignment from the registrant, Bernheim Distilling Company.[1]

The Old Charter company began the contest on October 4, 1938, by applying to the Commissioner of Patents, under what was then 15 U.S.C.A. § 93, for cancellation of Charter Oak on the ground of confusing similarity; but some months later the application was dismissed without prejudice. The next step was by Continental, which applied to the Commissioner on February 14, 1940, for the cancellation of Old Charter's certificate No. 321823, alleging it constituted a threat to, an interference with, and a cloud upon, its rights in its own trade-mark, Charter Oak, and its rights under its own certificate No. 311038. In a bill of particulars, Continental stated it was relying upon the confusion in trade clause of the statute.

1. The Charter Oak registration, applied for November 22, 1933, was issued March 13, 1934. The Old Charter registration, applied for on October 27, 1934, by Bernheim Distilling Company, a Kentucky corporation, was issued on February 19, 1935.

After a hearing the Acting Examiner of Interferences on September 14, 1942, recommended the cancellation of Old Charter, and on appeal the Commissioner affirmed. On November 22, 1943, Old Charter Distillery Company filed this suit in the United States District Court for the District of Columbia to enjoin the Commissioner from cancelling its mark, seeking also an adjudication that its certificate of registration No. 321823 "* * * is good and valid in law, and that plaintiff is the sole and exclusive owner of said Certificate, of the trade mark 'Old Charter' set forth therein, and of the good will and business thereof and connected therewith, in and throughout the United States of America." Continental Distilling Corporation, also a defendant, was served with process in Delaware. The District Court found for Old Charter [2] and Continental appeals.

 First to be considered is whether Continental Distilling Corporation correctly contends that service upon it in Delaware did not bring it before the District Court here. In weighing this question, it must be remembered the Old Charter company was a registrant opposing cancellation of its trade-mark. As such it had, under § 9 of the Trade-Mark Act (February 20, 1905, ch. 592, § 9, 33 Stat. 727) as amended, the right to appeal to the United States Court of Customs and Patent Appeals.[3] It also had the right, if unsuccessful in that appeal, to resort to an independent bill in equity against the Commissioner to prevent cancellation, under the provisions of R.S. § 4915.[4] United States ex rel. The Baldwin Co. v. Robertson, 1924, 265 U.S. 168, 44 S.Ct. 508, 68 L.Ed. 962. Nor was an unsuccessful appeal a prerequisite to its right to sue the Commissioner; for, under §§ 4911 [5] and 4915 of the Revised Statutes, as amended by an act of March 2, 1927, 44 Stat. 1336, ch. 273, §§ 8 and 11, the defeated party in a cancellation proceeding may elect to appeal to the United States Court of Customs and Patent Appeals or to employ the alternative remedy of filing a bill in equity. Alexandrine v. Coe, 1934, 63 App.D.C. 227, 71 F.2d 348.

 Continental argues, nevertheless, that a registrant who has been defeated by the Commissioner in a cancellation proceeding cannot bring a bill in equity under R.S. § 4915. To support the argument, which is contrary to the Supreme Court's Baldwin holding, Continental says in its brief:

"It is submitted that the [Supreme] Court, in the Baldwin case, erred in interpreting Section 9 of the Trade-Mark Act and R.S. 4915, and that Congress in enacting Section 9 did *not* intend to give the defeated registrant in a cancellation proceeding the right to bring a bill in equity."

The appellant also called the Baldwin opinion "unsound" and "at variance with the legislative intent." It is, of course, beyond our province to say the Supreme Court erred in the Baldwin case, even if we thought it did. Not only are we bound by its ruling; we are also convinced the holding is correct.

 With the right of the Old Charter company to maintain an action under R.S. § 4915 thus established, it is relevant to note 35 U.S.C.A. § 72a (1940), which is as follows:

"Upon the filing of a bill in the district court of the United States for the District of Columbia wherein remedy is sought under section 63 or section 66 of this title, without seeking other remedy, if it shall appear that there is an adverse party residing in a foreign country, or adverse parties residing in a plurality of districts not embraced within the same State, the court shall have jurisdiction thereof and writs shall, unless the adverse party or parties voluntarily make appearance, be issued against all of the adverse parties with the force and effect and in the manner set forth

2. Judge Holtzoff's opinion is reported as Old Charter Distillery Co. v. Ooms, D. C.D.C., 1947, 73 F.Supp. 539. Final judgment was signed on June 22, 1948.

3. Originally the right of appeal was to this court, but the statute was changed

(March 2, 1929, ch. 488, § 2(b), 45 Stat. 1476).

4. 35 U.S.C.A. § 63.

5. 28 U.S.C.A. § 1542.

in section 113 of Title 28; provided that writs issued against parties residing in foreign countries pursuant to this section may be served by publication or otherwise as the court shall direct. March 3, 1927, c. 364, 44 Stat. 1394; June 25, 1936, c. 804, 49 Stat. 1921." Unless it is inapplicable in the circumstances of the present case, this statute authorized the extraterritorial service of process upon the appellant.

Section 72a is not applicable, says Continental, because the Commissioner could not be sued alone and therefore is not an adverse party within the meaning of the section. From this it is argued there are not present here "adverse parties residing in a plurality of districts not embraced within the same State." Our decisions in Coe v. Hobart Mfg. Co., 1939, 70 App.D. C, 2, 102 F.2d 270, and J. C. Eno (U.S.) Limited v. Coe, 1939, 70 App.D.C. 337, 106 F.2d 858, are cited to support the argument.

We held in the later case of Tomlinson of High Point v. Coe, 1941, 74 App.D.C. 364, 123 F.2d 65, the Commissioner is a proper party in all proceedings properly brought under R.S. § 4915, and under that statute may be sued alone by a registrant who has been defeated in a cancellation proceeding. See also Speed Products Co. v. Tinnerman Products, 1948, 83 U.S.App. D.C. 243, 171 F.2d 727. So the Commissioner is a proper party here.[6] He filed an answer challenging the court's jurisdiction, denying the material allegations of the complaint, and asserting his intention of cancelling the plaintiff's mark unless prevented from doing so by the court's order. Moreover, his counsel appeared in the District Court and argued in opposition to the plaintiff. In such circumstances it is unrealistic to say the Commissioner is not an adverse party.

Continental makes the further point that this action cannot be said to be one in which remedy is sought under § 4915 "without seeking other remedy"; that therefore § 72a of Title 35 of the Code does not apply. The complaint here did not "seek other remedy" in our view. An injunction against the cancellation of the trade-mark was the remedy properly sought under § 4915 as construed by the Baldwin case. The only other relief prayed for was that the Old Charter company be adjudged the owner of the mark. This was not the seeking of "other remedy" but was an essential prerequisite to the right to an injunction. Obviously the District Court could not enjoin the Commissioner from cancelling the mark without first determining the appellee was the lawful owner of it. So we conclude no "other remedy" was sought. Service of the writ in Delaware brought Continental before the District Court.

Next to be considered is the question of priority. There is evidence that "Old Charter" has been in use since 1874, while "Charter Oak" was first claimed on November 22, 1933. So there is no claim that the latter antedates the former as to original appropriation and use. Appellant's position is that Old Charter was abandoned and was not in existence as a valid trademark when it claimed Charter Oak, and therefore the appellee did not obtain title through the mesne assignments from its alleged predecessors. Consequently the case turns on the validity of the chain of title asserted by Old Charter. The field of examination is narrowed by appellant's concession that " * * * for purposes of this appeal * * * Wright & Taylor, a Kentucky corporation, was the owner and user of the trade-mark 'Old Charter' prior to the advent of Prohibition." If there was an abandonment, it was after the effective date of prohibition.

We set forth here the periods during which those claimed as predecessors by the appellee are said to have owned the trade-mark Old Charter, and the dates of the assignments which constitute the chain of title claimed by appellee.

1. Wright & Taylor, a Kentucky corporation, admittedly the owner of the mark at the advent of prohibition, held it from

---

6. This action was instituted before the effective date of the Lanham Trade-Mark Act, 60 Stat. 435, 15 U.S.C.A. § 1071, which provides the Commissioner shall not be a necessary party in an *inter partes* proceeding under § 4915.

that time until July 18, 1933, when it sold its still substantial stock of cased Old Charter as well as a considerable quantity of bulk whiskey to U. S. Distillers, Inc. The contract purported also to sell the trade-mark Old Charter. On the same day, July 18, 1933, Wright & Taylor sold the trade-mark and good will to Wright-Taylor Distillery Company, a Kentucky corporation wholly owned by U. S. Distillers, Inc.

2. U. S. Distillers, Inc., or Wright-Taylor Distillery Company (Kentucky), or perhaps both, held title from July 18, 1933, until October 2, 1933, when they executed separate instruments of assignment to Wright & Taylor Distilling Corporation (Maryland). U. S. Distillers, Inc., transferred certain trade-marks, including Old Charter, "together with the business and good will incident to the sale of whiskey thereunder, and all labels and other indicia of ownership used in connection with said business." The sale included warehouse receipts for more than 1,100 barrels of whiskey and the assignor's rights under a contract with Stitzell, another distiller, by which Stitzell had agreed to manufacture 411 additional barrels for U. S. Distillers, Inc., without cost. Wright-Taylor Distillery Company (Kentucky) assigned the mark Old Charter and other marks, together with good will, reciting that it did so pursuant to its parent's agreement that it would. On the same day Wright & Taylor, the Kentucky corporation which had made the assignments of July 18, 1933, executed to Wright & Taylor Distilling Corporation (Maryland) an instrument of quitclaim to Old Charter and other trade-marks, together with good will, reciting that it did so pursuant to its agreement with U. S. Distillers, Inc.

3. Wright & Taylor Distilling Corporation (Maryland) owned the trade-mark from October 2, 1933, until December 14, 1933, when it contracted to sell to Bernheim Distilling Company (Kentucky) certain trade-marks, including Old Charter, the good will of the business, and 1,189 barrels of whiskey plus the 411 barrels to be produced by Stitzell. This was followed by an instrument of conveyance dated December 15, 1933, which acknowledged re-

ceipt of the consideration stipulated in the contract of the previous day.

4. Bernheim Distilling Company (Kentucky) owned the trade-mark from December 14, 1933, until March 9, 1937, when it sold and assigned the trade-mark and good will to Bernheim Distilling Company (Delaware). The assignment included certificate of registration No. 321823 which had been issued to Bernheim of Kentucky on February 19, 1935, pursuant to its application of October 17, 1934.

5. Bernheim Distilling Company (Delaware) owned the trade-mark from March 9, 1937, until June 4, 1937, when it assigned the mark and good will to Old Charter Distilling Company (Maryland), the appellee.

With respect to paragraph No. 1 Continental says Wright & Taylor could not validly transfer the trade-mark and good will in July, 1933, because its activities during the period of prohibition and up to July, 1933, were merely in the nature of a liquidation of its stock of whiskey and that in July, 1933, Wright & Taylor was "not actively engaged in a bona fide whiskey business." Yet we find the appellant saying the following in its brief:

"Upon the advent of Prohibition, Wright & Taylor, along with other distillers, was left with a substantial stock of whiskey, both bottled and in bulk, which it had to dispose of through the only channel available, namely by sales to druggists for medicinal purposes.

"Naturally, it took a long time for Wright & Taylor to dispose of its large stock of whiskey through this limited channel of distribution and, as a result, Wright & Taylor still had a supply of 'Old Charter' branded whiskey in bottles as well as a supply of unbranded bulk whiskey as late as 1933."

This amounts to a concession that Wright & Taylor was actively engaged in, and was using the trade-mark in connection with, a bona fide whiskey business in July, 1933, as it had been all during the years of prohibition. Consequently it could make a valid sale of its trade-mark and good will on July 18, 1933.

Continental charges the attempted transfer of the trade-mark to U. S. Distillers, Inc., on July 18, 1933, was ineffective because there was no transfer of a business or good will. The point may be well taken. But by the assignment simultaneously executed to Wright-Taylor Distillery Company, wholly owned by U. S. Distillers, Inc., the assignor transferred the mark and the good will as well. It follows that if title to Old Charter did not then vest in U. S. Distillers, Inc., it did pass to its wholly owned subsidiary, and Continental's contention to the contrary must be rejected. We shall return later to a discussion of the effect of these two apparently divergent assignments.

As to paragraph No. 2, the appellant argues further that from July 18, 1933, to October 2, 1933, the period of ownership of U. S. Distillers, Inc., or Wright-Taylor Distillery Company, the trade-mark Old Charter was used by neither and so was abandoned. It is also asserted that the Maryland corporation which held the trade-mark from October 2, 1933, until December 15 of that year (paragraph No. 3), when it assigned to Bernheim of Kentucky, did not use the mark during that period and so abandoned it. A similar contention is made with respect to non-use by Bernheim of Kentucky from December 15, 1933, to March 19, 1937 (paragraph No. 4), from which it is insisted that Bernheim of Kentucky did not effectively transfer the trade-mark to Bernheim of Delaware. Consistently arguing, appellant says the transfer from Bernheim of Delaware to Old Charter Distilling Company (paragraph No. 5) was ineffective.

Appellant's assertions of abandonment, concurred in by the Commissioner in argument before the District Court, are to the effect that a trade-mark is lost if not constantly used; that the slightest cessation of use [7] causes a trade-mark to roll free, like a fumbled football, so it may be pounced upon by any alert opponent. Continental says the trade-mark Old Charter had become "the subject of reappropriation and the property of the first taker" at the time it applied for registration of Charter Oak.

That the law is otherwise is shown by Beech-Nut Packing Co. v. P. Lorillard Co., 1927, 273 U.S. 629, 47 S.Ct. 481, 71 L.Ed. 810, which went up from the Third Circuit, 7 F. (2d) 967 (1925). The facts in that case were these: In 1897 the Harry Weissinger Tobacco Company originated a brand of tobacco called "Beechnut" and registered the word as its trade-mark. In 1903 it sold its assets, business, good will and trade-mark to the Continental Tobacco Corporation, which in turn sold the mark and other assets to Luhrman & Wilbern Tobacco Company in return for all its issued capital stock. In 1904 Continental Tobacco Company was merged with American Tobacco Company. When the latter was dissolved in 1911 pursuant to an antitrust decree, the capital stock of Luhrman & Willbern Tobacco Company and its trade-marks and brands, including Beechnut, were transferred to P. Lorillard Company. The trade-mark Beechnut was dormant from 1910 until 1915, when Lorillard brought out a new product under that name. The Beech-Nut Packing Company claimed Lorillard had abandoned the mark.

Mr. Justice Holmes, speaking for the Court said, 273 U.S. at page 631-632, 47 S. Ct. at page 482:

"* * * It appears that brands of tobacco have their rise and fall in popular favor, and that the Beechnut had so declined that in 1910 only twenty-five pounds were sold, and the trade-mark was left dormant until after the dissolution of the American Tobacco Company which then held it. This was in 1911, and the Lorillard Company took over the mark with many others. Then in connection with an effort to get a new brand that would hit the present taste, this mark was picked out, some of the adjuncts were changed, and in 1915 the new tobacco was put upon the market. Nothing had happened in the meantime to make the defendant's position worse than if it had acted more promptly and we see no reason to disturb the finding of two

---

7. In two instances it is claimed that nonuse for a period of less than three months forfeited the mark.

courts that the right to use the mark had not been lost. The mere lapse of time was not such that it could be said to have destroyed the right as matter of law."

■ In addition to its argument of abandonment, the appellant urges that the trade-mark Old Charter should be cancelled on the ground that Bernheim Distilling Company obtained registration No. 321823 by fraudulently representing to the Commissioner that it had used the mark. This seems to us to be a strained construction of the Trade-Mark Act. Section 2 of the Act (then 15 U.S.C.A. § 82) required the applicant for registration to file a verified written declaration to the effect *inter alia* "that such trade-mark is used in commerce." We have held that the requisite use may be shown to have occurred at any time prior to application. Macaulay v. Malt-Diastase Company, 1925, 55 App.D.C. 277, 4 F.2d 944. We now hold use by applicant's predecessor met the requirement of the statute.

Although Continental charges that the assignment of July 18, 1933, from Wright & Taylor to U. S. Distillers, Inc., did not pass the trade-mark because neither a going business nor good will went with it, nevertheless it argues that Wright-Taylor Distillery Company (Kentucky), the assignee in the other assignment of July 18, 1933, "could not contend that U. S. Distillers, Inc., had *no right* to use 'OLD CHARTER.' " Appellant says,

"Indeed, the simultaneous purported transfer of the trade-mark 'Old Charter' to two separate corporate entities by the divergent instruments [the two assignments of July 18, 1933] * * * operated, in and of itself, as an abandonment of the mark, since both assignee corporations (*sic*) could thereby claim the right to use the mark independently of the other."

■ Yet in the same connection appellant calls attention to the fact that "Wright-Taylor Distillery Company was a subsidiary of U. S. Distillers, Inc., so that its policies could be controlled thereby." This statement refutes the argument that the divergent instruments worked an abandonment. A court of equity, in order to do justice, does not hesitate to disregard a corporate entity and to recognize that all the assets of a solvent wholly owned subsidiary are equitably owned by the parent corporation. Socony-Vacuum Oil Co. v. Sheehan, D.C.E.D.Mo., 1943, 50 F.Supp. 1010; Berl v. Crutcher, 5 Cir., 1932, 60 F.2d 440, 444.

■ Another contention of the appellant is that the appellee is not the real party in interest in this case. It is based, seemingly, on the fact that, since June, 1937, the sales of Old Charter whiskey have been invoiced by Schenley Distillers Corporation or by one of its wholly owned subsidiaries or affiliates other than Old Charter Distillery Company, and that the latter's operations have been financed by Schenley. According to a stipulation made in the District Court it seems apparent that the Old Charter company is wholly owned by Schenley. These considerations are not enough to justify the dismissal of this suit in equity on the ground that Old Charter Distillery Company was not the real party-plaintiff.

■ We agree with the District Court that the broad equities of the situation are strongly with the appellee. The trade-mark Old Charter, which seems to be regarded as having substantial value, has been in continuous use for three-quarters of a century, with only slight interruptions. It would be inequitable, in our view, to take this valuable right from its owner on any of the technicalities relied upon by the appellant.

Affirmed.