**NATIONAL TUBERCULOSIS ASS'N**

v.

**SUMMIT COUNTY TUBERCULOSIS & HEALTH ASS'N et al.**

Civ. No. 29518.

United States District Court,
N. D. Ohio, E. D.

May 26, 1954.

**656**

John C. McCune, Dargusch, Caren, Green & King, Columbus, Ohio, Frank X. Cull, Cleveland, Ohio, for plaintiff.

Buckingham, Doolittle & Burroughs and Ely, Frye & Hamilton, Akron, Ohio, for defendants.

JONES, Chief Judge.

Claiming the exclusive ownership and right of use of a valid trade-mark having a double barred cross used in its literature and on Christmas seals in its campaigns to raise funds for use in the prevention and treatment of tuberculosis, the plaintiff seeks to enjoin the defendants from using the double barred cross in their campaigns, asserting infringement and unfair competition or practices with respect thereto.

The defendants had for several years worked under a cooperative agency contract with the plaintiff, but desiring to cut down extra campaigns for funds and to run their own local campaign procedure, incurred the plaintiff's disfavor and now the defendants seek to continue to use the double barred cross in their independent campaign, despite plaintiff's cancellation of its agency contract.

I think the whole matter turns on whether the plaintiff is sole and exclusive owner and first user of the trade-mark.

The case is one for the application of statutes designed for the protection of those engaged in business and commerce,—to a non-profit, charitable enterprise. But I suppose the rules of law are the same where the trade-mark is used to promote a campaign to raise money in the interest of the prevention and cure of disease on an eleemosynary basis; and that the law applies as against those whose efforts may be or are directed to the same objective, to prevent them from using the same insignia as a promotional symbol, especially if such use is calculated to cause confusion and mistake as to the rightful owner of the symbol, and the sponsor back of the campaign.

For the convenience of the parties it is thought that the issues and the court's responses best could be separately stated:

*Jurisdiction:*

█ The parties agree that this court has jurisdiction of the claim of unfair competition; there being diversity of citizenship among the parties and the required amount in controversy.

I conclude that the court also has jurisdiction of the trade-mark claim.

Jurisdiction is conferred upon this court by the Lanham Act, Title 15 U.S.C.A. § 1121, and the Judicial Code, Title 28 U.S.C.A. § 1338, to grant protection against infringement of a trade-mark registered under the Act of 1905, when used "in commerce".

█ A trade-mark is used "in commerce" when it is affixed to goods which are sold or transported in commerce. Title 15 U.S.C.A. § 1127. "Commerce" is defined to mean "all commerce which may lawfully be regulated by Congress." Id. The infringement must also occur in commerce.

█ Jurisdiction is held to extend to intrastate activities of a defendant where those activities have a substantial and adverse effect upon the plaintiff's interstate commerce. U. S. Printing & Lithograph Co. v. Griggs, Cooper & Co., 1929, 279 U.S. 156, 49 S.Ct. 267, 73 L.Ed. 650; Cole of California, Inc., v. Collette of California, Inc., D.C.Mass., 1948, 79 U.S.P.Q. 267. See also, Mandeville Island Farms, Inc., v. American Crystal Sugar Co., 1948, 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328; U. S. v. Wrightwood Dairy Co., 1942, 315 U.S. 110, 62 S.Ct. 523, 86 L.Ed. 726. Cf. Creamette Co. v. Conlin, 5 Cir., 1951,

191 F.2d 108; Pure Oil Co. v. Puritan Oil Co., 2 Cir., 1941, 127 F.2d 6; Horlick's Malted Milk Corp. v. Horluck's Inc., 9 Cir., 1932, 59 F.2d 13.

■ The evidence in this case does not establish that the defendants have transported or sold Christmas seals in interstate commerce; nor is there any evidence that they have distributed literature outside of the State of Ohio. Nevertheless, it scarcely can be doubted that defendants' Christmas seal sale in Summit County has adversely affected and will adversely affect the plaintiff's fund solicitation there. The activities of these defendants multiplied in other places would seriously threaten plaintiff's national organization and its nationwide tuberculosis program.

I find and conclude that the court has jurisdiction both of the trade-mark claim and the related claim of unfair competition.

*Validity of Plaintiff's Trade-Mark:*

Defendants challenge the validity of plaintiff's trade-mark and assert that the double barred cross as the symbol of the fight against tuberculosis cannot be exclusively appropriated by the plaintiff as a lawful trade-mark.

We are met at the outset with the provision of the Act that the certificates of registration are prima facie evidence of the registrant's exclusive right to use the registered mark in commerce in the manner specified in the certificates. Title 15 U.S.C.A. § 1115(a). An opposing party may nevertheless prove any legal or equitable defense or defect which might have been asserted if the mark had not been registered. Id.

■ The courts have said that registration, under this statutory provision, creates a rebuttable presumption of validity which must be overcome by the party challenging validity. Rolley, Inc., v. Younghusband, 9 Cir., 1953, 204 F.2d 209; McCane v. Mims, 1951, 187 F.2d 163, 38 C.C.P.A., Patents, 836. Allowance of the trade-mark by the Patent Office implies regularity and furnishes a presumption of validity. James Heddon's Sons v. Millsite Steel & Wire Works, 6 Cir., 1942, 128 F.2d 6, certiorari denied, 317 U.S. 674, 63 S.Ct. 79, 87 L.Ed. 541; Pastificio Spiga Societa Per Azioni v. De Martini Macaroni Co., 2 Cir., 1952, 200 F.2d 325; Grove Laboratories, Inc., v. Brewer & Co., 1 Cir., 1939, 103 F.2d 175.

■ A trade-mark is a symbol adopted and used by a manufacturer or merchant to identify his goods and distinguish them from goods of others. Title 15 U.S.C.A. § 1127. There can be no abstract right in a symbol; the symbol must be considered in association with the goods it identifies and their source. American Dirigold Corp. v. Dirigold Metals Corp., 6 Cir., 1942, 125 F.2d 446; Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 6 Cir., 1941, 119 F. 2d 316; Elgin National Watch Co. v. Illinois Watch Co., 1901, 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365; Patton Paint Co. v. Sunset Paint Co., D.C.Cir., 1923, 290 F. 323, 53 App.D.C. 348.

■ Defendants in challenging the validity of plaintiff's trade-mark assert that the plaintiff did not use the double barred cross as a trade-mark prior to its registration, and did not adopt it as a trade-mark; but has always used the cross as the symbol of the fight against tuberculosis. They contend that such use of the cross is not an appropriation which would create a lawful trade-mark.

It is true that the double barred cross has been a rallying symbol of various crusades throughout history. Plaintiff in its organization and purpose is the national coordinating agency of what might be called "the fight against tuberculosis". The evidence discloses that the predecessor of plaintiff adopted a form of a double barred cross as the emblem of its organization in 1906. Thereafter, it was used both by the plaintiff's predecessor and the plaintiff on letterheads, pamphlets and Christmas seals prior to first registration in 1920.

An independent use of the double barred cross was made in 1909 on a pamphlet entitled "A War Upon Consumption"—printed and distributed by the Metropolitan Life Insurance Company for the use of its policyholders. Thereafter the Metropolitan Life Insurance Company continued to use the cross on its pamphlets, but such use soon became cooperative and associated with the program of plaintiff's predecessor. The Insurance Company's use of the cross was not made under circumstances which would indicate an appropriation.

Except for the claimed infringing use by the defendants, the plaintiff alone has used the double barred cross as a symbol placed upon Christmas seals. It also has marked its pamphlets and literature with the cross.

While it may be conceded that the plaintiff does not engage in a wholly commercial enterprise, it has used the cross in connection with the sale and distribution of its seals and literature, and in its solicitation of charitable contributions. The cross has been identified with its "product".

I think the evidence sufficiently establishes a trade-mark use, both prior and subsequent to registration.

Plaintiff's use of the double barred cross, as recited heretofore was an appropriation and use in commerce sufficient to have made it the owner of the mark at the time of registration. New England Duplicating Co. v. Mendes, 1 Cir., 1951, 190 F.2d 415; Continental Distilling Corp. v. Old Charter Distillery Co., 1950, 88 U.S.App.D.C. 73, 188 F.2d 614; Motlow v. Oldetyme Distillers, 1937, 88 F.2d 732, 24 C.C.P.A., Patents, 1094; Wallace & Co. v. Repetti, Inc., 2 Cir., 1920, 266 F. 307; Wise v. Bristol-Myers Co., D.C.S.D.N.Y., 1952, 107 F.Supp. 800. Defendants have failed to show by convincing proof that the double barred cross was "publici juris" in 1920, as the symbol of the fight against tuberculosis.

It is in evidence that the double barred cross was adopted as an emblem of the world tuberculosis program in 1902 at the International Tuberculosis Conference in Berlin. Thereafter it was used as a symbol of the movement in the United States. Plaintiff was the leader of the tuberculosis program in this Country. If the double barred cross came to symbolize tuberculosis work, it did so by the plaintiff's use of it and in connection with its activities.

Defendants have further failed to establish by adequate proof that they or their predecessors first appropriated the double barred cross and made independent use of it in Summit County. Socony-Vacuum Oil Co. v. Oil City Refiners, 6 Cir., 1943, 136 F.2d 470; Hanover Star Milling Co. v. Metcalf, 1915, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; Bulova Watch Co., Inc. v. Steele, 5 Cir., 1952, 194 F.2d 567.

There remains the contention of defendants that plaintiff secured its registrations by means of fraudulent statements in its applications—barring valid registration. Title 15 U.S.C.A. §§ 1064(c) and 1119. The evidence does not disclose a use by plaintiff or its predecessor dating back to 1902 as stated in the oath accompanying the applications. However, this misstatement, as it seems to me, is not fatal in the circumstances of this case. Nothing has been presented in evidence from which it may be inferred that the statement was made in bad faith with fraudulent purpose and intent to secure a registration by deception. W. A. Gaines & Co. v. Turner-Looker Co., 6 Cir., 1913, 204 F. 553; Henderson v. Peter Henderson & Co., 7 Cir., 1952, 9 F.2d 787; Selchow Righter Co. v. Western Printing & Lithographing Co., D.C.E.D.Wis., 1942, 47 F.Supp. 322.

I conclude that plaintiff's trade-mark registrations of 1920 and 1923 are lawful and valid, and that it is otherwise the owner of a valid trade-mark.

*The Defense of Abandonment and Estoppel:*

Defendants assert the further defense that plaintiff, if the owner of a

trade-mark has lost its trade-mark rights by using the double barred cross as the symbol of the fight against tuberculosis and permitting others to make this use of the cross.

Health agencies and private groups have assisted the plaintiff and its local affiliates in its work and have cooperated in furthering the plaintiff's tuberculosis program. In so doing, they have used the double barred cross. It further appears that tuberculosis hospitals have made independent use of the cross in connection with their tuberculosis work. Nevertheless, the cross has always been identified with the Christmas seals of the plaintiff and appeared on its literature.

I do not think there is probative evidence that plaintiff has permitted its trade-mark to lose its distinctiveness by acquiescence in its use by others; nor does the evidence indicate an intention on the part of the plaintiff to abandon its trade-mark. See Saxlehner v. Eisner & Mendelson Co., 1900, 179 U.S. 19, 21 S.Ct. 7, 45 L.Ed. 60; Dietz v. Horton Mfg. Co., 6 Cir., 1909, 170 F. 865; E. L. duPont deNemours & Co. v. Celanese Corp. of America, 1948, 167 F.2d 484, 35 C.C.P.A.Patents, 1061, 3 A.L.R. 2d 1213; Dwinell-Wright Co. v. White House Milk Co., 2 Cir., 1943, 132 F.2d 822; Dixi-Cola Laboratories v. Coca-Cola Co., 4 Cir., 1941, 117 F.2d 352; Heger Products Co. v. Polk Miller Products Corp., 1931, 47 F.2d 966, 18 C.C.P. A., Patents, 1106.

*Infringement and Unfair Competition:*

■ The trade-mark of the plaintiff is not original, arbitrary or fanciful so as to be accorded the broad protection of a "strong mark". Majestic Mfg. Co. v. Majestic Electric Co., D.C.N.D.Ohio, 1948, 79 F.Supp. 649, affirmed 6 Cir., 1948, 172 F.2d 862. It was not origi-

nated by the plaintiff, and admittedly has had wide use and historical significance.

Nor is the evidence persuasive that the double barred cross has come to have a "secondary meaning". See Radio Corporation of America v. R. C. A. Rubber Co., D.C.N.D.Ohio, 114 F.Supp. 162, and cases cited. I am not convinced that the double barred cross is associated with the organization of the plaintiff in the minds of the public.

■ Nevertheless, the plaintiff is entitled to protection of its trade-mark uses. There can be little doubt that defendants have infringed the plaintiff's trade-mark and made an unauthorized use of the double barred cross on Christmas seals distributed by them in 1952. To this extent, they have also competed unfairly with the plaintiff. There is evidence of confusion created by simultaneous Christmas seal campaigns in Summit County.

Although not a basis for decision, it seems not inappropriate to observe, as a matter of public interest, that this case has in it the seeds of revolt against the ever increasing burden of multiple fund raising campaigns. Unless there is better cooperation for consolidation, solicitor and contributor interest will begin to lag, and worthy causes suffer.

Since only limited scope can be accorded the plaintiff's trade-mark, injunctive relief must be circumscribed accordingly; decree of restraint in use will go no further than the extent of trade-mark rights as here found, defined and determined.

This memorandum is, in my opinion, adequate as compliance with Rule 52(a), 28 U.S.C.A., respecting findings and conclusions and may be considered as such.