46 CCPA

**Benjamin D. SMITH, Jr., and Howerton Gowen Company, Inc. (Black Panther Company, Inc., Assignee, Substituted), Appellant,**

v.

**COAHOMA CHEMICAL COMPANY, Inc., Appellee.**

**Patent Appeal No. 6405.**

United States Court of Customs and Patent Appeals.
March 16, 1959.

John Howard Joynt, Washington, D. C., for appellant.

John Marshall Rommel, Washington, D. C., for appellee.

Before WORLEY, Acting Chief Judge, and RICH, MARTIN, and JOHNSON (retired), Judges.

WORLEY, Acting Chief Judge.

This is an appeal from the decision of the Commissioner of Patents, speaking through the Assistant Commissioner, 113 U.S.P.Q. 413, affirming the decision of the Examiner of Interferences, granting petitions by Coahoma Chemical Company, Inc., appellee here, to cancel two trade-mark registrations of appellant.

Both registrations are for the words "Black Panther" and each includes a different picture of a panther, the marks being registered as trademarks for insecticides. Both registrations were granted July 31, 1951. One, No. 546,051, was granted to a Benjamin D. Smith, Jr., Sanford, North Carolina, on an application filed May 10, 1950; while the other, No. 546,032, was granted to Howerton Gowen Company, Inc., Roanoke Rapids, North Carolina, assignor to said Benjamin D. Smith, Jr.

Both registrations were assigned to Black Panther Company, Inc., after the cancelation proceeding was instituted; but such assignment does not affect the issues here involved, since, if the registrations were invalid when they were assigned, they obviously could not be validated by the assignments.

The petitions for cancelation were based on appellee's ownership and use of the trade-mark "Red Panther" for insecticides. It is clear that the marks of the respective parties are confusingly similar and accordingly damage to appellee from concurrent use of the marks is to be presumed. American Brewing Company, Inc. v. Delatour Beverage Corporation, 100 F.2d 253, 26 CCPA 778.

As properly described by the Assistant Commissioner, appellee's petitions for cancelation were based on three allega-

tions; namely, (1) appellee's *lawful* use of its trade-mark "Red Panther" on insecticides and fungicides antedates appellant's *lawful* use of "Black Panther" as an insecticide; (2) appellant did not, at the time of filing his application or at any time thereafter, use or own "Black Panther" as a trade-mark; and (3) the registrations issued as a result of false and misleading statements to the Patent Office by respondent under oath. (Emphasis quoted.)

The Assistant Commissioner found that the petitioner had proved each of its three allegations, although the Examiner of Interferences based his decision on only the second allegation, which he found to have been proved. We shall consider that allegation first.

The stipulated evidence on behalf of appellee shows that it began using the "Red Panther" mark on insecticides in commerce in the spring of 1950. In the view we take of this case, the exact date of such first use need not be determined.

As shown by the record, Benjamin D. Smith, Jr., hereafter referred to as Smith, by agreement with his father, established in August, 1948, a North Carolina branch plant of General Insecticide Company, Inc., a corporation of New York. Smith was a stockholder and vice president of that corporation and was in full control of the operations of the North Carolina plant.

It appears, beginning in 1949, that sales of insecticide were made by General Insecticide Company, Inc., under the "Black Panther" trade-mark.

In October 1950, the General Insecticide Company, Inc., of North Carolina was formed with Smith as its president and principal stockholder. The new corporation acquired all the interest of the North Carolina branch of the New York corporation, and was granted the right to continue to use the "Black Panther" mark on insecticides, which it did. In March 1952 the Black Panther Company, Inc., a corporation of North Carolina, was organized as a sales company which handled the products of the

North Carolina General Insecticide Company, Inc.; and in 1955 those two companies were consolidated under the name of Black Panther Company, Inc.

On May 10, 1950, Smith filed the application on which registration No. 546,051 was granted. In that application, he stated that he was "doing business as the branch plant and office of General Insecticide Company, Inc., 752 Herkimer Road, Utica, New York." In view of that statement, the examiner, in a letter dated October 12, 1950, said:

"However, the present papers indicate there are two entities involved in this application, and only the owner of a mark is entitled to registration thereof. If the General Insecticide Company, Inc. is the owner a new application must be filed; however, if the mark is owned by Benjamin D. Smith Jr. new papers must be submitted in compliance with Form 1 as set forth in Rules of Practice in Trade Mark Cases."

Pursuant to that requirement, Smith filed a substitute statement and declaration omitting all reference to General Insecticide Company, Inc., and registration was granted on the basis of these papers substituted. It is clear, therefore, the registration was granted on the basis of ownership and use by Smith as an individual and not on use by either of the General Insecticide companies.

The other registration involved, No. 546,032, was granted July 31, 1951, on an application filed April 19, 1950, by Howerton Gowen Company, Inc., and assigned to Benjamin D. Smith, Jr., as an individual, on May 1, 1951.

Both Patent Office tribunals held, and we agree, that the record shows that there was no use whatever of either of the "Black Panther" marks by Smith as an individual. The answers by Smith to interrogations by the petitioner include the following:

"Q9. Has respondent [Smith] ever sold or shipped any insecticidal

products, either in intrastate or interstate commerce, where such products indicated proprietorship in the respondent? A9. No."

■ Since Smith never used the "Black Panther" marks as an individual, his registration No. 546,051, which is based on an allegation of such use, is invalid and should be canceled. While it is alleged by Smith that he owned the mark and authorized its use by the General Insecticide companies, it was properly pointed out by the Assistant Commissioner that ownership of a mark must be derived from use rather than from a conception of the idea of the mark. Accordingly, assuming that Smith originated the idea of the "Black Panther" mark and authorized its use by one or both of the companies, those facts would not vest ownership of the mark in him as an individual.

■ As regards the "Black Panther" mark covered by registration No. 546,-032, the record shows that Smith, after receiving the assignment of the mark as an individual on May 1, 1951, made no use of it as an individual, at least up to May 10, 1954, when he made the above-quoted answer to the appellee's interrogation, and there is no evidence that he ever intended to use the mark in that manner. Under such circumstances, assuming arguendo that appellant actually acquired said mark as a result of the assignment, we agree with the Assistant Commissioner that he abandoned it.

■ Appellant argues that mere failure to use a trade-mark, even for a substantial period of time, does not necessarily prove abandonment, citing Beech-Nut Packing Co. v. P. Lorillard Co., 273 U.S. 629, 47 S.Ct. 481, 71 L.Ed. 810, and Continental Distilling Corp. v. Old Charter Distillery Co., 88 U.S.App.D.C. 73, 188 F.2d 614. In the instant case, however, Smith did not use either of the "Black Panther" marks as an individual and, so far as the record shows, never had any intention of doing so. On the contrary, he acquiesced in their use by

the companies with which he was associated. It seems at least doubtful whether the purchase of a trade-mark without any intention of using it confers a valid title on the purchaser but, even assuming that it does, we are of the opinion a failure to use it, or to evince any intention of doing so for a period of more than three years after such a purchase is sufficient to establish abandonment of the mark.

■ In our opinion, appellant's contention that use of the marks "Black Panther" by the General Insecticide companies inured to his benefit as that of related companies under section 5 of the Lanham Act, 15 U.S.C.A. § 1055, was properly disposed of by the Assistant Commissioner as follows:

"Respondent's contention that General Insecticide Co., Inc., a New York corporation, and General Insecticide Co., Inc., a North Carolina corporation, were his 'related companies' whose use inured to his benefit is without merit. Respondent was merely an employe and officer of the New York corporation. So far as the record shows, he was not, as an individual, engaged in any business, but the record shows that he certainly was not, as an individual, engaged in any business in connection with which the mark was used. The goods were neither made by him, as an individual, nor for him, as an individual, nor were they sold under the mark for his account, as an individual. While he may, as an officer and employe of such corporation, have been individually responsible to the corporation for maintaining certain standards of product quality, such responsibility was to his employer and not to the public. The products manufactured and sold were, under the terms of the employment contract, the products of the corporation for which the corporation, and not respondent individually, was responsible to the purchasing public. * * *"

Appellant argues here that the assertion of that relationship is not based on his status as an officer of the North Carolina corporation, but as a stockholder, therein. However, the exact extent of his holding was not definitely brought out in the record.

Smith testified that he was a "principal" and "controlling" stockholder, but the actual percentage of stock owned by him was not shown. Certainly it has not been established that his ownership was so complete that he and the corporation equitably constituted a single entity.

We are of the opinion Smith's failure to use either of the registered marks is fatal to the validity of the registrations, and it is therefore unnecessary to pass on the other grounds on which the decision of the Assistant Commissioner was based.

Appellant has assigned error in the refusal of the Assistant Commissioner to reopen the case for the introduction of additional evidence on the issue whether certain shipments of insecticide by General Insecticide Company, Inc., in 1949 and 1950 were unlawful. Since we find it unnecessary to pass upon the legality of such shipments, it is also unnecessary to pass upon the denial of appellant's petition for leave to take further testimony on that subject.

The decision of the Assistant Commissioner is affirmed.

Affirmed.