[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action was commenced by an application for an order to show cause praying for inter alia, temporary and permanent injunctive relief, summons and complaint dated November 16, 2000, against Robert A. Fernandez, Russell Gorman, Frank Page, James Cavalari and RPMC, Incorporated. The Rat Pack Motorcycle Club, an unincorporated association intervened as a defendant and the Legitimate Rat Pack Motorcycle Club (hereinafter Crafa's Club) was added as a plaintiff. The Rat Pack Motorcycle Club of Waterbury, Inc., was substituted for Rat Pack Motorcycle Club, an unincorporated association. By order of the Court (Pittman, J.) dated September 17, 2002, incorporating an agreement of the parties, a jury trial was waived and the issue of damages bifurcated to be tried at a later date. A second amended complaint dated October 2, 2002, contained 28 counts; four counts against each of the seven defendants.[1] The four counts against each defendant can be further explained as follows: The two plaintiffs, Crafa and Crafa's Club, alleging as to each defendant a violation of the State of Connecticut trademark statutes and a violation of federal trademark statutes (Lanham Act).
The defendants filed an answer together with special defenses as well as a counterclaim against both plaintiffs alleging state and federal trademark violations by the plaintiffs and seeking, essentially, the inverse of the relief sought by the plaintiffs.
The matter came before the court for trial on November 14, 2002, and post-trial briefs were filed on December 19, 2002.
 FACTS
In 1964, having been earlier inspired by a viewing of "The Wild Ones" with Marlon Brando and Lee Marvin, John Crafa decided to start a motorcycle club. Crafa invited approximately nine acquaintances to an organizational meeting and it was agreed they would form a club. Within a few weeks it was decided that the club would be known as the Rat Pack CT Page 2998 Motorcycle Club, a name coined by Crafa. By the second meeting, officers were named not so much by fiat as claimed by Crafa, but more by way of acclamation and/or default.
Shortly thereafter, bylaws were created. Crafa, as President, proposed rules and after discussion and "argument back and forth," (Transcript p. 6 Crafa testimony) they were accepted by the other members. Despite the bylaws, President Crafa came to treat the Rat Pack Motorcycle Club as a paramilitary organization. Absent objection from the other members, he became a bird or full colonel, Vice President Fernandez a lieutenant colonel, Treasurer DeFilio a captain, and Secretary Avery a first lieutenant. Additionally, there were two sergeants-at-arms.
Crafa took the initiative with regard to nearly all club activities including finding meeting places and scheduling events such as charity dances.
From 1964 through 2001, the Rat Pack Motorcycle Club was a voluntary association. In 1964, the Rat Pack Motorcycle Club established colors (gold on black) and marks conceived by Crafa (RPMC and Rat Pack Motorcycle Club) and began to use both as identifying characteristics of the Club, and distinguishing the goods and services offered by the Club.
For the ten-year period 1964 through 1974, the Club continued to have weekly meetings, social and charity events and member rides. Members wore Club colors and marks on t-shirts, sweatshirts and jackets. Advertisements for and tickets to Club events bore the RPMC mark (s).
In 1974, the Club, having no regular leased meeting space, ceased having weekly meetings. Members would informally get together and some members would continue to wear their Club colors and marks. As a practical matter, the Club ceased to function as an organization.
In 1999, Crafa, much in the same way as he had done before in creating the original Club in 1964, conceived the idea of having a reunion for the original Club members. To that end, he invited 15 old members to a planning meeting. Once again, Crafa took the organizational initiative in connection with the reunion.
On August 28, 1999, the reunion was held and was attended by nearly 600 people including approximately 30 of the original members. Sign-up sheets at the reunion indicated a strong interest in resurrecting the Club. Subsequent to the reunion, members of the original club, met to determine whether to reinstate the Club. A vote was taken and the majority voted that the Club should be reconstituted, the group having previously agreed CT Page 2999 that the majority would rule. It is illuminating that President Crafa never questioned the necessity or efficacy of votes taken on various proposals at any or all of the meetings.
The Club adopted bylaws[2] based upon what the members recollected of the Club's original bylaws with some minor changes i.e. wives and girlfriends were now permitted to wear colors and marks on t-shirts and sweatshirts.[3] The bylaws strongly evidence an association governed by a board of officers, not a paramilitary organization ruled and controlled by Crafa. Not withstanding Crafa's assertions to the contrary, he did not control the Club. The Club had well established and accepted bylaws and governed itself accordingly.
RPMC, Inc. was formed in connection with the leasing of property for a new clubhouse together with a cafe and grill. Club members, including carpenters, electricians and plumbers helped renovate the Club's building on their own time with Crafa serving as "foreman."
By April or early May of 2000, other club officers and members had increasing disagreements with President Crafa regarding non-payment of dues and the ownership and operation of the cafe.
At a special meeting on May 8, 2000, the board took up various items of business. A motion made by vice president Bob Fernandez and seconded by treasurer Frank Page regarding the temporary operation of the luncheonette was "passed unanimously" by the board. (Defendant's Exhibit 6.)
President Crafa made a proposal regarding the operation of the bar and a second proposal was made by vice president Bob Fernandez. A 15-minute recess was taken so that the board could think over both proposals before taking a vote. (Defendant's Exhibit 6). The minutes reflect Bob Fernandez' proposal prevailing and President John Crafa's proposal being defeated three to one with President John Crafa being the lone voter in favor. Other business included the passage of a proposal that all board members pay dues. The minutes reflect that President Crafa made a motion to adjourn and after being seconded, the meeting was adjourned.
Crafa considered this behavior to constitute mutiny and ceased having any involvement with the Club. Crafa and eight members loyal to him left to form President Crafa's Club.
On or about June 26, 2000, President Crafa, attempted to procure the registration of the "RPMC" mark through the filing of an application with the United States Patent and Trademark office. CT Page 3000
At a meeting of the board on July 9, 2000, called specially for determining President Crafa's status, the three remaining board members voted that no "officer should hold tenure of office in the Club." President Crafa, by subsequent motion, was removed.
On or about July 12, 2000, Crafa procured the registration of the following marks: "Rat Pack Motorcycle Club" service mark registration no. 20976 filed with the Connecticut Secretary of State and registered on July 12, 2000, and "RPMC" service mark registration no. 20977 filed with the Connecticut Secretary of State and registered on July 12, 2000.
From August 1999, to the present day, the Club has continued to meet, has advertised the Club, has used its colors and the marks "Rat Pack Motorcycle Club" and "RPMC" for goods and services and has conducted the general affairs of the club in accordance with its bylaws.
The marks "Rat Pack Motorcycle Club" and "RPMC" were used by Crafa in connection with the Club's activities and, apart from activities associated with the Club, Crafa never used them in his individual capacity. On or about July 10, 2001, the Club received a certificate of registration 2,467,920 from the United States Patent and Trademark office for the service mark Rat Pack Motorcycle Club and on July 3, 2001, received a certificate of registration 2,465,711 for the service mark R.P.M.C. The marks were assigned to the Rat Pack Motorcycle Club of Waterbury, Inc.
 DISCUSSION
Pursuant to Section 35-11i of the Connecticut General Statutes, a state court has jurisdiction to hear a state trademark claim. Section 35-11i
provides, in relevant part, as follows:
Any registrant of a mark registered under this chapter may proceed by suit to enjoin the wrongful manufacture, use, display or sale of any reproduction, counterfeit or imitation thereof and any Court of competent jurisdiction may grant injunctions to restrain such manufacture, use, display or sale as may be deemed just and reasonable . . .
Section 1119 of Title 15 of the U.S. Code and 15 U.S.C.A. 1120 provide a court with broad authority over marks. Section 1119 provides, in relevant part, as follows:
In any action involving a registered mark the Court may determine the CT Page 3001 right to registration, order the cancellation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the Court to the director, who shall make appropriate entry upon the records of the Patent and Trademark office, and shall be controlled thereby.
Section 1120 of Title 15 of the U.S. Code provides, in relevant part, as follows:
Any person who shall procure registration in the Patent and Trademark office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.
In cases arising under the Lanham Act, the jurisdiction of the federal and state courts is concurrent. Aquatherm Industries, Inc. v. Fla. Power Light Co., 84 F.3d 1388, 1394 (11th cir. 1996); ScientificTechnology, Inc. v. Stanford Telecommunications, Inc., 9 U.S.P.Q.2d (BNA) 1566, 1567 (N.D.Cal. 1988). State courts can pass upon the validity of federal trademark registration. See Brown Bigelow v. RemembranceAdvertising Prod., 279 App.Div. 110 N.Y.S.2d 441 (1952) "These two statutes [15 U.S.C. § 1121 (a) and 28 U.S.C. § 1338 (a)] indicate that Congress did not intend to limit adjudication of trademark actions under the Lanham Act to federal courts . . . State courts possess powers under the Lanham Act identical to those of the federal courts." 5 McCarthy on Trademarks and Unfair Competition (4th ed. 1997) § 32:1.
Unlike patent law, rights in trademarks are not gained through discovery or invention of the mark, but only through actual usage.McCarthy on Trademarks, Section 16:11.
The fact that Crafa originated the marks does not vest ownership of the marks in him as an individual. Smith and Howerton Gowen Co., Inc. v.Coahoma Chemical Co., Inc., 264 F.2d 916, 919 (1959).
The marks in question have always been used by the Club and for the benefit of the Club. Consequently, the Club, not Mr. Crafa, acquired trademark and service mark rights in the marks R.P.M.C. and RAT PACK MOTORCYCLE CLUB.
 ORDER
1. A permanent injunction prohibiting counterclaim defendant, John CT Page 3002 Crafa and President Crafa's Club from using the service mark and trademark "Rat Pack Motorcycle Club" and "RPMC" in any manner including in connection with an application with the United States Patent and Trademark office serial number 78-01435 is hereby issued.
2. Cancellation of the service mark registration number 20976 for the service mark "Rat Pack Motorcycle Club" and service mark registration number 20977 for the service mark "RPMC" pursuant to Connecticut General Statutes Section 35-11g (3) (B) is hereby ordered.
DUBAY, J.